In re CAN PON et al.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1909.)

No. 1,625.

1. COURTS (§ 405*) — JURISDICTION OF CIRCUIT COURTS OF APPEALS—CASES INVOLVING CONSTITUTIONAL QUESTIONS.

The fact that constitutional questions were involved in a case in a Circuit or District Court does not deprive the Circuit Court of Appeals of jurisdiction to entertain an appeal therein, where other questions also were involved and determined.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1099; Dec. Dig. § 405.*]

2. CONSTITUTIONAL LAW (§ 318*) — DUE PROCESS OF LAW—CHINESE EXCLUSION ACTS—HEARING OF APPLICANT CLAIMING CITIZENSHIP.

An applicant for entry into the United States of Chinese descent, but claiming to be a citizen thereof, is not deprived of his liberty without due process of law by reason of his detention by the immigration officers, if he is given a hearing as to his rights by the appropriate officers of the department. Such hearing, however, must be granted and conducted in good faith, and the officers must take the testimony of such witnesses as may be

suggested by the applicant if pertinent, although they are not required to permit him to be present in person or by counsel or to be informed of the nature of the testimony.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. § 318.*]

3. HABEAS CORPUS (§ 23*)—GROUNDS FOR RELIEF—CHINESE EXCLUSION ACTS—DENIAL OF FAIR HEARING TO APPLICANT FOR ADMISSION.

Where an applicant for entry into the United States of Chinese descent, but claiming to be a native-born citizen, was denied the right of entry and detained for deportation by the immigration officers, and took an appeal to the Secretary of Commerce and Labor, the failure of such officers, through inadvertence or otherwise, to include in the record testimony taken on the hearing, and which bore upon the question of citizenship, was a substantial denial of the right of appeal given to the applicant by the statute, and entitles him to maintain habeas corpus proceedings, in which he may have a fair hearing on his right to enter and to be discharged from detention.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 23.*]

4. HABEAS CORPUS (§ 113*)—HEARING ON APPEAL—QUESTIONS OF FACT.

On an appeal in a habeas corpus proceeding in a federal court, all questions of fact upon the evidence are open to consideration, and the findings of the court below are not conclusive upon the appellate court, but they should not be set aside unless the court is convinced that they are erroneous.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 114; Dec. Dig. § 113.*]

Morrow, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 161 Fed. 618.

Look Wing, the father of the petitioner presented to the court below a petition for a writ of habeas corpus, alleging that in the month of August, 1892, in the city of Seattle, state of Washington, Can Pon was born of Chinese parents who then resided and were permanently domiciled in said city; that in the year 1899 he, with his parents, departed from the United States and went to the empire of China, where he remained until October, 1907; that he then returned to the United States and applied for admission at the port of Sumas, in the state of Washington; that upon his arrival he was placed in confinement by Harry Edsell, the Chinese inspector in charge at the port of Sumas, and was not permitted to communicate with his counsel or friends, but was subjected to a rigid and severe examination, at which no one but the inspector and his deputies was permitted to be present. The petition sets forth the proceedings taken with respect to the application of Can Pon for admission into the United States, the taking of testimony in relation thereto while he was detained at the port of Sumas, where it was impossible for him to see or hear any of the witnesses produced against him, the action of the inspector in charge in preventing him from procuring witnesses in his own behalf to prove his identity, denying him the right to return, and ordering his deportation to the empire of China, and the appeal of Can Pon to the Department of Commerce and Labor. The petition alleges that prior to taking said appeal neither the said Can Pon nor his counsel or friends were permitted in any way to examine or inspect the evidence produced on behalf of the government; that during the examination and investigation the inspector in charge obtained certain testimony exceptionally favorable to the said Can Pon, but neglected to submit the same to the Secretary of the Department of Commerce and Labor on the appeal, and that said testimony was not before the Secretary when said appeal was decided, and was never presented to the Department of Commerce

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

and Labor on the appeal; that the Secretary of Commerce and Labor affirmed the decision of the inspector, and ordered the deportation of Can Pon. The petition alleges that the inspector, in rendering his decision, and the Secretary of Commerce and Labor, in affirming the same, acted arbitrarily, without any evidence to support their decision, and that by reason of prejudice and secret communications they grossly abused their discretion, and that by said decisions Can Pon has been deprived of his rights and liberty as a citizen of the United States, and has been ordered to be deported from his native land, without just cause or due process of law. The petition refers to rules 5, 6, 12, and 13 promulgated by the Secretary of the Department of Commerce and Labor, under which the rights of Can Pon were adjudicated, and alleges that those rules do not and cannot apply to a citizen of the United States; that they are arbitrary, inconsistent, and void under the fifth amendment to the Constitution of the United States, in that they deprive a citizen of the United States of his rights, liberty, and property without due process of law; that in detaining, confining, and restraining said Can Pon the inspector and the Secretary of Commerce and Labor acted arbitrarily, and contrary to law and the Constitution of the United States, and without jurisdiction, and that Can Pon is imprisoned and about to be deported without due process of law. Upon this petition the Judge of the District Court issued a writ of habeas corpus, and upon the return to the writ referred the case to a commissioner to take testimony. Upon the testimony so taken the court found that there was an investigation had by the inspector, but that it took place and was carried on in the city of Seattle, many miles distant from the port of Sumas; that neither the applicant nor his counsel was permitted to be present during such investigation, nor permitted to know or inspect the evidence or information gathered by the agents of the inspector until after the rejection of the said applicant; that no opportunity was afforded or given to the applicant or his counsel to be present at the examination of witnesses, nor were they permitted to examine the witnesses, nor were they given an opportunity to refute or explain any statements that may have been obtained against said applicant; that, in taking the testimony and examining the applicant's right to enter the United States, the officers acted in a partial and arbitrary manner, and abused the discretion reposed in them by law, and obtained testimony in a manner inconsistent with a fair judicial investigation; that testimony favorable to the applicant was taken during the course of the investigation, but was by the inspector inadvertently withheld from the record on the appeal, and the applicant was denied the benefit thereof on the appeal; that the Secretary of the Department of Commerce and Labor did not at all consider the appeal, but that the Acting Secretary of the department, who heard and dismissed the appeal, was the same person who as solicitor for the same department recommended the dismissal; that the appeal was not considered on its merits, nor was the ruling of the inspector in charge affirmed; that the appeal was dismissed without consideration upon its merits. The court further found upon the evidence that Can Pon was born in Seattle in the year 1892, and that he was entitled to enjoy liberty in his own country, and ordered that he be discharged from custody.

Elmer E. Todd, U. S. Atty., and F. G. Dorety, Asst. U. S. Atty., for appellant.

J. M. Hammond and Frank E. Hammond, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is suggested that this court is without jurisdiction of the appeal, for the reason that the case presents questions of the application of the Constitution of the United States. We find no ground for so holding. If the case as brought to this court presented constitutional questions only, the appellate court jurisdiction of the Supreme Court would, of course, be exclusive. It is doubtful whether the appeal does involve the application of the Constitution. No such question is suggested in

the assignment of error or in the brief of either of the parties before this court. It is true that the petition alleges that certain rules promulgated by the Secretary of the Department of Commerce and Labor are unconstitutional, but those rules have been before the Supreme Court and have been sustained in United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, and Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369. But conceding that constitutional questions are presented in the record, it is clear that the appeal brings before us other questions not involving the application of the Constitution, for the appellant complains of error in the court below, first, in holding that the appellee was denied a fair opportunity to prove his citizenship, and, second, in finding upon the evidence in the record that the appellee was born within the United States and is a citizen thereof. The presence of such other questions in the record gives this court appellate jurisdiction. The cases of Dimmick v. Tompkins, 194 U. S. 540, 24 Sup. Ct. 780, 48 L. Ed. 1110, and Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, which are referred to as denying our jurisdiction, go no farther on this point than to sustain the proposition that the appeal in such a case as this may, at the election of the appellant, be taken directly to the Supreme Court instead of to the Circuit Court of Appeals. In Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397–407, 24 Sup. Ct. 376, 378, 48 L. Ed. 496, the court said:

"Was the judgment of the Circuit Court subject to review only by this court, or was it permissible for the plaintiff to take it to the Circuit Court of Appeals? If the case, as made by the plaintiff's statement, had involved no other question than the constitutional validity of the act of 1898, or the construction or application of the Constitution of the United States, this court alone would have had jurisdiction to review the judgment of the Circuit Court. Huguley Mfg. Co. v. Galeton Cotton Mills, 184 U. S. 290–295, 22 Sup. Ct. 452, 46 L. Ed. 546. But the case distinctly presented other questions which involved simply the construction of the act, and those questions were disposed of by the Circuit Court at the same time it determined the question of the constitutionality of the act. If the case had depended entirely on the construction of the act of Congress—its constitutionality not being drawn in question—it would not have been one of those described in the fifth section of the act of 1891 (Act March 3, 1891, c. 517, 26 Stat. 827 [U. S. Comp. St. 1901, p. 549]), and, consequently, could not have come here directly from the Circuit Court. As, then, the case made by the plaintiff involved a question other than those relating to the constitutionality of the act and to the application and construction of the Constitution, the Circuit Court of Appeals had jurisdiction to review the judgment of the Circuit Court, although, if the plaintiff had elected to bring it here directly, this court would have had jurisdiction to determine all the questions arising upon the record."

See, also, Harris v. Rosenberger, 145 Fed. 449, 76 C. C. A. 225, 13 L. R. A. (N. S.) 762, and Hooper v. Remmel (C. C. A.) 165 Fed. 336. The case of United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, was a case which involved constitutional as well as other questions. Appeal had been taken to the Circuit Court of Appeals. From the decision of that court the case was taken by certiorari to the Supreme Court. In that court the contention was made that the Circuit Court of Appeals had no jurisdiction of the appeal, but the Supreme Court sustained the jurisdiction. Such, also, is the effect of United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct.

644, 49 L. Ed. 1040, a case which went to the Supreme Court on certificate from the Circuit Court of Appeals.

In approaching the question whether upon the record in this case the applicant for admission to the United States was denied such a hearing as the statute contemplates, we must find our guiding principles in the construction which the Supreme Court has placed upon the law in the Ju Toy Case and in the Chin Yow Case. In the Ju Toy Case it was ruled that in such a case as this due process of law does not require a judicial trial. In that connection the court expressly approved the doctrine of Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, in which it was said that "the decisions of executive and administrative officers acting within the powers expressly conferred by Congress are due process of law." In the Chin Yow Case the doctrine of the Ju Toy decision was modified, and it was held that habeas corpus might properly issue on behalf of a Chinese claiming to be a citizen of the United States, upon a petition showing that he was prevented by the officials of the Commissioner of Immigration from obtaining the testimony of certain designated witnesses, and allegations setting forth such facts were held to import that the petitioner arbitrarily was denied such a hearing and such an opportunity to prove his right to enter the country as the statute meant that he should have. In brief, it is the doctrine of these two decisions that an applicant for admission to the United States, detained upon the border thereof by the officials of the Department of Commerce and Labor, is not deprived of his liberty without due process of law if his rights are determined without a judicial trial, and that the decision of the officers is due process of law, with this limitation, that such officers must grant a hearing in good faith, something more than the semblance of a hearing, and must take the testimony pertinent to the questions involved of such witnesses as may be suggested by the applicant. This does not mean, and the decisions cannot be construed as holding, that the applicant is entitled of right to be present in person or by counsel at the taking of the testimony, or to be informed of the nature thereof, while it is being taken. In this respect we do not find that the investigation and proceedings before the officers at Sumas and at Seattle in the present case were conducted in such a manner as to deprive the applicant of due process of law. Nor, in the light of the record, are we able to assent to the conclusion reached by the trial court that the officers who conducted the examinations acted in a partial or arbitrary manner, or abused the discretion reposed in them, or acted upon improper testimony, or failed to conduct the investigation according to law and the rules of the department, or that the applicant was denied a fair opportunity to produce his testimony. It is obvious that he, coming to the United States at the age of 15 years, after having lived in China since his early boyhood, could have no personal knowledge of the testimony that might or ought to be adduced in his favor. His father, Look Wing, represented him, produced witnesses in his behalf, and apparently presented all the testimony that was available. Look Wing, in testifying, had made such inconsistent and contradictory statements as to justify the severity

of the examination to which he was subjected. We do not find in the manner in which the examination was conducted any convincing evidence that the inspector was biased or that he was actuated by any purpose other than an honest desire to sift the evidence and to ascertain whether it was free from the deception and imposition which it is well known is not infrequently attempted in this class of cases.

But the applicant upon his appeal from the decision of the local officer was entitled to the benefit of all the material evidence which was before the inspector. To withhold any thereof, and to exclude it from the record on the appeal, was to deny him the right of appeal which the statute gives him. The testimony of a witness which was on the whole favorable to the applicant's contention was by inadvertence omitted from the record on the appeal, and was not considered on the hearing thereof. It makes no difference that such evidence was taken at the instance of the inspector, and that it never came to the attention of the applicant or his counsel; it was a portion of the evidence taken by the inspector as an officer of the government, whose duty it was to act impartially and to ascertain the truth as to the question at issue. A portion of the testimony so omitted was direct evidence to the effect that the applicant was born within the United States. The inspector discredited it, but the applicant was entitled to the benefit of it on the appeal. It is no answer to this to say that portions of the testimony of that witness tended to contradict certain statements of Look Wing. Having been denied the benefit of all the testimony taken upon the question of his right of admission to the United States, the applicant has been deprived of the right of appeal which the statute confers upon him, and he may, therefore, upon habeas corpus, test the legality of his imprisonment. In re Monaco (C. C.) 86 Fed. 117; United States v. Wong Chung (D. C.) 92 Fed. 141; United States v. Chin Fee (D. C.) 94 Fed. 828; Rodgers v. United States, 152 Fed. 346, 81 C. C. A. 454; United States v. Nakashima, 160 Fed. 842, 87 C. C. A. 646.

The court below, upon the new testimony adduced on the hearing upon the writ, found that the applicant was born in the United States and was a citizen thereof. Upon the appeal all questions of fact upon the evidence are open to consideration, and the findings of the court below are not conclusive upon us, as they would be in actions at law upon a waiver of a jury, or in cases in admiralty. Johnson v. Sayre, 158 U. S. 109, 15 Sup. Ct. 773, 39 L. Ed. 914. The finding, however, should not be set aside unless the evidence in the record is such as to convince an appellate court that it was erroneous. Quock Ting v. United States, 140 U. S. 417, 11 Sup. Ct. 733, 851, 35 L. Ed. 501. There are marked contradictions and inconsistencies in the testimony of Look Wing, and we are not impressed with the credibility of the excuse which is made that his memory had been impaired by recent illness. But the finding of the court below was based on the testimony of several witnesses who testified directly to the fact that the applicant was born in the United States, and the court was particularly influenced by the testimony of a white witness who had not testified on the original hearing.

Upon a consideration of the whole of the evidence, we are not convinced that there was error in the finding so made. The judgment, therefore, will be affirmed.

MORROW, Circuit Judge (dissenting). The petition of Look Wing to the District Court alleged that he was the father of Can Pon, and that Can Pon was a native-born citizen of the United States; that he was born in the city of Seattle, in the state of Washington, in the month of August, 1892; that thereafter in the year 1899 the said Can Pon together, with his father, mother, and brother, departed from the United States and went to the empire of China, where the said Can Pon remained until the month of October, 1907; that the said Can Pon then returned to the United States, and applied for admission at the port of Sumas, in the state of Washington; that immediately upon his arrival he was placed in confinement by said Harry Edsell, Chinese inspector in charge at the port of Sumas; that he was not permitted to communicate with his counsel or friends, but was subjected to a rigid and severe examination, at which time no one but the said inspector and his deputies were permitted to be present. The petition recites the proceedings taken with respect to the admission of Can Pon into the United States; the taking of testimony in that behalf at Seattle, while Can Pon was detained at the port of Sumas, many miles distant from the investigation, where it was impossible for him to see or hear any witnesses produced against him; the action of the inspector in charge in preventing Can Pon to procure witnesses in his own behalf and prove his identity; the action of the inspector denying him the right to return, and ordering his deportation to the empire of China; and the taking of an appeal to the Department of Commerce and Labor.

It is alleged that prior to the taking of said appeal neither the said Can Pon, his counsel, nor his friends were permitted in any way to examine or inspect the evidence produced on behalf of the government. It is further alleged that, during the examination and investigation of the right of said Can Pon to enter the United States, the inspector in charge obtained certain testimony exceptionally favorable to the said Can Pon; that the said inspector in charge neglected to submit such testimony to the Secretary of the Department of Commerce and Labor on the appeal taken to said Secretary; that said testimony was not before said Secretary when said appeal was decided, and was never presented to said Department of Commerce and Labor on said appeal. It is alleged that the Secretary of Commerce and Labor affirmed the decision of the inspector and ordered the deportation of Can Pon. It is alleged that, in rendering the said decision by the said inspector in charge and its affirmance by the said Secretary of Commerce and Labor, these officials acted arbitrarily, without any evidence to support their decision, and by reason of prejudice and secret communications grossly abused their discretion; that by the said decision of the Secretary of Commerce and Labor the said Can Pon has been deprived of his rights and liberty as a citizen of the United States, and the inspector in charge and the said Secretary of the Department of

Commerce and Labor have ordered his deportation from his native land without just cause or due process of law.

Certain rules of procedure, established by the Secretary of the Department of Commerce and Labor, under which the rights of Can Pon, alleged citizen of the United States, were adjudicated, are set forth in the petition. These rules are numbered 5, 6, 12, and 13, and it is alleged that these rules do not and cannot apply to a citizen of the United States; that they are arbitrary, unconstitutional, and void under the fifth amendment of the Constitution as applied to the said Can Pon, in that they deprive a citizen of the United States of his rights, liberty, and property without due process of law. It is further alleged that in detaining, confining, and restraining the said Can Pon the said inspector and the said Secretary are acting arbitrarily, contrary to the law and the Constitution of the United States, and without jurisdiction, for the reason that the said Can Pon is a citizen of the United States of America, and is now imprisoned and about to be deported without due process of law. These allegations are supported by a statement in detail of the proceedings before the inspector, before the Department of Commerce and Labor, and by affidavit. Upon this verified petition the Judge of the District Court issued a writ of habeas corpus, and upon the return of the writ referred the matter to a commissioner of the court to take testimony. The testimony being taken, the matter was submitted to the court for decision.

The court found as facts from the testimony that there was an investigation had by the inspector upon application of Can Pon for admission to the United States at the port of Sumas, but this investigation took place and was carried on in the city of Seattle, many miles distant from Sumas, where the applicant was confined; that neither the applicant nor his counsel were permitted to be present during such investigation, nor were they or any of them permitted to know of or inspect the evidence or information gathered by the agents of the said inspector until after the rejection of the said Can Pon; that no opportunity was afforded or given to the petitioner or his counsel to be present at the examination of witnesses obtained by the said inspector against the applicant, nor were they permitted to examine the witnesses, nor were they given an opportunity to refute or explain any statements that may have been obtained against the said Can Pon; that the examination of the said Can Pon was conducted and the testimony for the purpose of ascertaining the applicant's right to enter the United States was taken, and the officers intrusted with the duties thereto acted in a partial and arbitrary manner, and in abuse of the discretion reposed in them by law, and obtained said testimony in a manner inconsistent with a fair judicial investigation, and said investigation was not conducted according to law or the rules governing such investigations, and wholly in violation thereof; that testimony favorable to the applicant taken during the course of the investigation was by the inspector inadvertently withheld from the record on appeal, and the applicant was denied the benefit thereof before the Secretary of the Department of Commerce and Labor in determining said appeal; that the Secretary of the Department of Commerce and Labor, to whom by law appeals are

allowed in this class of cases, did not at all consider this case, but that the Acting Secretary of the Department of Commerce and Labor, who dismissed the appeal, was the same person who, as solicitor for the same department, recommended the dismissal; that the said appeal was not considered upon its merits, nor the ruling of the inspector in charge affirmed, but was dismissed without consideration upon its merits. With respect to this finding the court says in its opinion:

"The statutes cannot be so construed or applied as to deprive citizens of their birthright, and the power of the judicial branch of the government to relieve against oppression amounting to deprivation of liberty cannot be restricted to any extent greater than is necessary for the exercise of the functions which naturally and properly pertain to the executive branch. Laws which confer judicial discretion upon administrative officers must be construed with a degree of strictness requisite to make them consonant with the spirit of the fundamental doctrines of the Constitution. Having this principle in mind, I hold that as applied to a case involving a question as to the right of an individual, claiming to be a citizen, to enter the United States, the law which gives the right of appeal to the head of an executive department from an adverse decision by a subordinate official places a grave responsibility upon an officer of exalted station, requiring him to give personal consideration to the appeal and to render an impartial decision, which is incompatible with a right to delegate his discretionary power."

The court further found that Can Pon was born in the city of Seattle, in the state of Washington, in the year 1892, and the court was of the opinion that he was therefore by force of the fourteenth amendment to the Constitution of the United States a citizen and entitled to enjoy liberty in his own country. Upon the facts thus found, the court discharged Can Pon from custody.

From the facts found by the District Court it appears that the Chinese inspector followed the rules of procedure prescribed by the Secretary of Commerce and Labor in investigating the claim of right asserted by Can Pon to return to the United States, and that the procedure on appeal was in accordance with such rules. The claim is that these rules do not and cannot apply to a citizen of the United States, that they are arbitrary, unconstitutional, and void under the fifth amendment of the Constitution, in that they deprive a citizen of the United States of his rights, liberty, and property without due process of law.

In my opinion, all there is in this case is the question whether the method of procedure followed by the officers was due process of law. With respect to the omission of testimony from the record on appeal to the Secretary of Commerce and Labor referred to in the opinion of the majority of the court, it is sufficient to say that this defect in the procedure was a lack of due process of law, and, by reason of that fact, the omission of the testimony became known only by the proceedings in court upon the petition for a writ of habeas corpus. Without such proceeding this testimony might never have come to the knowledge of the petitioner or his attorney. A citizen of the United States returning from a foreign country and claiming the right to come into the United States as such citizen may never know under this procedure the testimony produced against him, may never have an opportunity to meet it, or to cross-examine the witness who may testify against him. Is this due process of law? And whether it is

or not is a constitutional question. The question involved in this appeal is therefore, in my opinion, a single constitutional question, the determination of which, under the provisions of section 5 of the act of March 3, 1891, c. 517, 26 Stat. 826 (U. S. Comp. St. 1901, p. 549), establishing the Circuit Courts of Appeals, is vested in the Supreme Court of the United States. Craemer v. Washington State, 168 U. S. 124, 127, 18 Sup. Ct. 1, 42 L. Ed. 407; Dimmick v. Tompkins, 194 U. S. 540, 546, 24 Sup. Ct. 780, 48 L. Ed. 1110; Chin Yow v. United States, 208 U. S. 8, 10, 28 Sup. Ct. 201, 52 L. Ed. 369.

In my opinion, the appeal should be dismissed.